477 P.2d 152

Freal A. **STRATTON**, Plaintiff and
Appellant,

v.

Ira **NIELSEN**, dba **J & I Trucking Compa-
ny and Sherman Kay Christensen,**
Defendants and Respondents.

No. 12031.

Supreme Court of Utah.

Nov. 25, 1970.

J. Harlan Burns, of Burns & Park, Ce-
dar City, for plaintiff and appellant.

Stephen B. Nebeker, of Ray, Quinney &
Nebeker, Salt Lake City, for defendants and
respondents.

HENRIOD, Justice:

Appeal from a judgment on a unanimous
verdict of no cause of action in a personal
injury action. Affirmed with costs to de-
fendants.

The record reveals in most part facts that
were controverted. Those more favorable
to the defendants may be abstracted as fol-
lows:

Defendant Christensen, agent of defend-
ant trucking company, and an experienced
driver, was driving a truckload of cattle
west of Las Vegas, Nevada, at night. He
stopped at a summit to check his tires and
load before commencing an 18-mile down-
grade to Baker, California. Plaintiff, driv-
ing an empty truck, passed defendant's park-
ed truck at the summit. Christensen low-
geared his truck, started toward Baker on
a two-lane, one-way highway, and while

traveling 35–40 m. p. h., saw two trucks about a mile ahead in the right lane. He smelled hot brakes, and saw the lead truck, whose brakes were burning, traveling slower than plaintiff's truck following behind. The plaintiff moved into the left lane, apparently to pass. Christensen could not tell if plaintiff signaled in changing lanes, but plaintiff slowed and pulled alongside the truck with the hot brakes. His rear lights flashed, indicating a slowdown, which later proved to be for the purpose of warning the driver of the truck alongside that his brakes were burning. This occurred when Christensen was 500–600 yards behind. He stayed in the right lane and slowed down until he considered the plaintiff's truck would pass the damaged vehicle, when he turned into the left lane and sounded his air horn and flashed his lights. Plaintiff's truck continued to stay alongside the other truck for a minute or two, during which time defendant sounded his horn again, and then applied his brakes continuously until he collided with the rear end of plaintiff's truck, when he was going about 30 and plaintiff 25 m. p. h., since he could not turn any further to the left because of a median barrow pit. Plaintiff said he was going about 15–20 m. p. h.

The plaintiff testified that he saw Christensen's truck following "real fast." Nonetheless he slowed down when passing the damaged truck and remained there for some time. After the impact both plaintiff's and defendant's trucks went off the highway on the right into the desert. The trucks were hooked onto each other, and he and defendant's relief driver drove them on to Los Angeles. Plaintiff was not hospitalized. About two months after the incident plaintiff was involved in a truck rollover accident.

On appeal, plaintiff made a more or less shot-gun assault on most every aspect of the case: That error was indulged by both the court and jury, 1) when the jury unreasonably and with prejudice found as it did, 2) when the court failed to give two requested instructions, 3) gave unbalanced instructions detrimental to plaintiff's case, and 4) neglected to have the bailiff take the exhibits *with* the jury to the jury room (although delivered there shortly afterward when the oversight was called to the trial court's attention).

As to 1), to the effect the jury reasonably could not have arrived at its (unanimous) verdict: Plaintiff's urgence was voiced in his motion for a new trial and for judgment non obstante veredicto. We believe that the contention is without merit and that on believable facts favorable to the plaintiff the jury reasonably could have concluded as it did. In saying this, we must concede that the jury might have decided otherwise on the conflicting facts here, and that under the circumstances we would have been obliged to affirm such opposite result. We believe, however, that this is not the type

of case where we can say without equivocation that the unanimous jury was passionate, prejudiced, biased or steeped in caprice.

 As to 2) above: The two instructions that plaintiff claims should have been given appear to have been accurate statements of the applicable law, but it appears that in substance they were covered by other instructions, many of which were stock instructions, and we find no prejudice in such refusal.

 As to 3), the claim of unbalanced instructions: Plaintiff urges that No. 4 "is a general statement of the duties of every driver and could apply to either defendant or plaintiff." No. 5 is a rather stock instruction of similar import. We can see no prejudicial unbalancing here, since such instructions seem to apply generally and equally to each of the litigants. Nos. 6 and 12 having to do with contributory negligence are attacked, not because of misstatement of the law, but because "when viewed in the light of the instructions as a whole, (they) prejudicially accentuated the theory of contributory negligence." Plaintiff does not clearly point out what other instructions provoke such a generalized conclusion, and we discern none.

 As to 4), it is impossible for us to see how hauling the exhibits to the jury room during the march thereto would be proper, but that carting them in a few minutes later would incite the minds of the veniremen as to steel their hearts against an injured plaintiff in wholesale violation of the oaths they shortly before had tokened with upraised hands.

CROCKETT, C. J., and CALLISTER, TUCKETT and ELLETT, JJ., concur.